UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OPEN SYSTEMS TECHNOLOGIES
DE, INC.,

    Plaintiff,

v.

TRANSGUARD INSURANCE COMPANY OF
AMERICA, et al.,

    Defendants.
                                    /

File No. 1:14-CV-312

HON. ROBERT HOLMES BELL

## **OPINION**

    This is a shipping and transportation case removed by Defendants from the Circuit Court of Kent County, Michigan. The matter is presently before the Court on Defendants Champagne Logistics and Transguard Insurance Company of America's Motion to Dismiss (ECF No. 7), Defendant University Moving and Storage Co.'s Motion to Join the Motion to Dismiss (ECF No. 6) and Plaintiff's Motion to Remand (ECF No. 10). The parties have filed responses and replies to each other's motions. The Court holds oral argument is unnecessary for resolution of the motions. For the following reasons the Court will deny Defendants' motion to dismiss and grant Plaintiff's motion to remand.

**I.**

    Plaintiff is a vendor of commercial computer equipment. In April 2013, non-party Spectrum Health placed an order for two Hewlett Packard high-capacity storage arrays. One array was to be shipped to Spectrum's data center and the second to its facility at 1231 East Beltline Avenue NE, Grand Rapids, Michigan (the East Beltline location). This second array's final destination was

located at 2859 Bradford Street NE, Grand Rapids, Michigan (the Bradford location). At the time of delivery, the Bradford location was still under construction. The second array (the Array) is the subject of the present lawsuit.

Plaintiff contracted with non-party Specialized Transportation Inc. (STI) to deliver the arrays. STI picked up the Array in Norman, Oklahoma, and delivered it to the East Beltline location on May 7, 2013. STI transferred the Array from its truck to a basement data center for storage.

On July 23, 2013, Plaintiff contacted Defendant Champagne Logistics (Defendant Champagne) to arrange for shipment of the Array from the East Beltline location to the Bradford location. Plaintiff also contracted with Defendant Transguard Insurance Company of America (Defendant Transguard) to insure the full value of the Array during transport, $750,000.

Defendant Champagne subcontracted with Defendant University Moving and Storage (Defendant University) to perform the actual moving and transportation of the Array. On August 2, 2013, Defendant University moved the Array from the East Beltline location to the Bradford location. Although a Spectrum employee signed for the Array on a form that stated it was in good condition, on August 7, 2013, Spectrum employees discovered that it was damaged.

Spectrum filed a claim with Defendant Transguard that was denied. A subsequent inspection of the Array by Hewlett Packard revealed that it was extensively damaged, and thus Hewlett Packard refused to service it or honor its warranty. Spectrum rejected the Array and ordered a new one from Plaintiff, assigning to Plaintiff all rights and interest it had in the Array.

Plaintiff sued Defendants in Kent County Circuit Court on February 17, 2014 alleging: breach of contract as to Defendant Transguard (Count I); equitable subrogation as to Defendant Transguard (Count II); breach of contract as to Defendant Champagne (Count III); negligence as to

2

Defendant University (Count IV); and breach of bailment as to Defendant University (Count V).

On March 25, 2014, Defendants removed to this Court, arguing that the Carmack Amendment, 49 U.S.C. § 14706, completely preempts state-law causes of action related to interstate shipping contracts. Defendants argue that the transportation of the Array from Oklahoma to the Bradford location constitutes one continuous act of shipping, and thus is an *inter*state shipping contract under the Carmack Amendment. Plaintiff argues that when STI delivered the Array to the East Beltline location, the original shipping contract terminated, and that moving the Array from the East Beltline location to the Bradford location is a new act of *intra*state transportation outside the purview of the Carmack Amendment. For the reasons that follow, the Court adopts Plaintiff's view and will remand this case to state court.

## II.

A motion to remand requires the Court to inquire whether it has original jurisdiction over a case. *See* 28 U.S.C. §§ 1441, 1447. A defendant who wishes to remove his or her case to federal court has the burden to prove that the Court possesses jurisdiction. *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 375 (6th Cir. 2007) (citing *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993)). All doubts regarding jurisdiction must be resolved against removal. *Harden v. Jayco., Inc.*, 496 F.3d 579, 581 (6th Cir. 2007) (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549–50 (6th Cir. 2006)). Jurisdiction is determined at the time of removal, *Williamson*, 481 F.3d at 375, and ascertained "by examining the complaint as it existed at the time of removal." *Harper v. AutoAlliance Int'l, Inc.*, 392 F6d 195, 210 (6th Cir. 2004). When confronted with a motion to remand and a motion to dismiss, the Court must decide the motion to remand first. *H. R. ex rel. Reuter v. Medtronic, Inc.*, ___ F. Supp. 2d ___, ___, No. 1:13–cv–859, 2014 WL 554454, at *1 n.2 (W.D.

Ohio Feb. 13, 2014).

Here, the complaint merely states claims sounding in state law. Nonetheless, Defendants argue that *the facts* alleged in the complaint state a claim under the Carmack Amendment, 49 U.S.C. § 14706, *et seq.*, which Defendants argue completely preempts Plaintiff's state-law claims. Normally, "a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint[.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). An exception to the general rule is when a federal statute "wholly displaces the state-law cause of action through complete pre-emption." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). "When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.*; *see also Aetna Health, Inc. v. Davila*, 542 U.S. 200, 207–08 (2004). In such circumstances a case may be removed to federal court even though the complaint is pled completely in terms of state law. For the purposes of this motion the Court assumes, without deciding, that the Carmack Amendment is such a statute.

Originally enacted in 1906, the Carmack Amendment provides standardized rules of common-carrier liability for interstate shipments on roads and rails. *CNA Ins. v. Hyundai Merch. Marine Co., Ltd.*, 747 F.3d 339, 354 (6th Cir. 2014). The Carmack Amendment "fully preempt[s] state law concerning the liability of interstate rail and road carriers." *Id.* (citing *Adams Express Co. v. Croninger*, 226 U.S. 491, 505–06 (1913)). The Carmack Amendment, however, only applies to shipping contracts that begin in one state and terminate in another, and is wholly inapplicable to shipping contracts where shipment begins and ends in the same state. *Id.*

The gravamen of the dispute at this point in the case is whether Defendants Champagne and

University's act of moving the Array from the East Beltline location to the Bradford location was an independent act of intrastate commerce or whether it constituted the final segment of the interstate commerce that began when STI shipped the Array from Oklahoma. Courts do not determine the nature of a shipment by mechanically inspecting the bill of lading or other documentation, but rather by examining "the essential character of the commerce." *United States v. Erie R.R. Co.*, 280 U.S. 98, 102 (1929). The essential character, in turn, is "reflected by the 'intention formed prior to shipment, pursuant to which property is carried to a selected destination by a *continuous or unified movement*.'" *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 699 (11th Cir. 1986) (quoting *Great N. Ry. Co. v. Thompson*, 222 F.Supp. 573, 582 (D.N.D. 1963) (three-judge panel) (emphasis added)).

> It is well-settled that, in determining whether a particular movement of freight is interstate or intrastate or foreign commerce, the intention existing at the time the movement starts governs and fixes the character of the shipment . . . [T]emporary stoppage within the state, made necessary in furtherance of the interstate carriage, does not change its character.

*Swift Textiles*, 799 F.2d at 699 (quoting *State of Tex. v. Anderson, Clayton & Co.*, 92 F.2d 104, 107 (5th Cir. 1937)). Refining the issue in the present case further, the question becomes whether the three months the Array spent at the East Beltline location was a "temporary stoppage within the state" or whether the movement from the East Beltline location to the Bradford location was a wholly new act of intrastate commerce.

Citing much the same authority as above, Defendants argue in their Response that the time the Array spent at the East Beltline location was a temporary stoppage, relying exclusively on the case of *Tayloe v. Kachina Moving & Storage, Inc.*, 16 F. Supp. 2d 1123 (D. Ariz. 1998) (misidentified in Defendants' pleadings as *Taylor*). In that case, the plaintiffs were moving from

5

Arlington Heights, Illinois to Phoenix, Arizona. They contracted with the defendants to move the contents of their household. Because the plaintiffs were building a house, "some of their household goods were to be delivered directly to [their] apartment and others were to be held in long-term storage at [the defendant's] Phoenix [facility] until [the plaintiff's] home was completed." *Id.* at 1126. When their household goods were finally delivered nine months later, the plaintiffs discovered that they had been severely damaged while in storage and sued, asserting various state-law claims. *Id.* The defendants moved for partial summary judgment, arguing that the plaintiff's state-law claims were pre-empted by the Carmack Amendment. *Id.* at 1127.

As in the present case, the plaintiffs argued that the Carmack Amendment did not apply to their claims because the shipment of their goods from storage to their new house was an act of intrastate commerce that took place only in Arizona. The court disagreed, holding that the storage of the plaintiffs' goods in Arizona was part of the overall shipping contract. *Id.* at 1128. Central to the court's reasoning was the fact that: (1) the bill of lading specified that the plaintiffs' goods would be stored temporarily in Arizona and then delivered later; (2) no separate contract or bill of lading was ever issued; and (3) the defendants did not undertake any additional duties in storing or transporting the goods within Arizona than what they were already obligated to do based on the Illinois to Arizona contract. *Id.*

*Tayloe* is distinguishable from the present case. As Plaintiff has alleged on the face of the Complaint, Spectrum agreed to accept shipment of the Array at the East Beltline location because the Bradford location was not ready. The shipping contract from Oklahoma to Michigan, therefore, did not contemplate the shipper storing the Array. To the contrary, Spectrum took actual possession of it. Because Spectrum took possession of the Array in Michigan, the interstate portion of shipping

terminated when the Array was delivered to the East Beltline location.

More instructive than *Tayloe* are other cases where a shipment has paused before reaching its final destination. In *Reider v. Thompson*, 339 U.S. 113 (1950), a shipment of wool and skins traveled by ship from Argentina to New Orleans, Louisiana, and by rail from New Orleans to Boston, Massachusetts. *Id.* at 115. As written at the time, the statute provided that liability would attach under the Amendment to a carrier who "'receiv[ed] property for transportation from a point in one State or Territory or the District of Columbia to a point in another State, Territory, District of Columbia, or from any point in the United States to a point in an adjacent foreign country.'" *Id.* at 114 (quoting 49 U.S.C. § 20(11) (1946)). When it arrived at New Orleans, the shipment was in good condition, but it was damaged upon receipt in Boston. *Id.* The owner of the goods sued the railroad shipper under the Carmack Amendment, but the shipper defended on the basis that the shipment began in a non-adjacent foreign country, and thus was outside the purview of the Amendment.

The Court disagreed, ruling that the Carmack Amendment applied because the entire line of transportation from Argentina to Boston was in fact two separate shipments. *Id.* at 117. The Court relied on the following factors in reaching its conclusion: (1) there was no through bill of lading from Argentina to Boston; (2) there was no privity between the railroad carrier and the ocean carrier; and (3) the contract for ocean transportation terminated at New Orleans, and "[h]aving terminated, nothing of it remained for the new, separate, and distinct domestic contract of carriage to 'supplement.'" *Id.* The Court concluded by holding that

> If the various parties dealing with this shipment separated the carriage into distinct portions by their contracts*, it is not for courts judicially to meld the portions into something they are not*. The test is not where the shipment originated, but *where the obligation of the carrier as receiving carrier originated*.

7

*Id.* (emphasis added).

Here, it is clear that the parties dealing with the shipment separated the movement of the Array into distinct portions by separate contracts. Plaintiff contracted with STI to ship the Array from Oklahoma to the East Beltline location on behalf of its client, Spectrum. When the Bradford location was completed, it executed a separate contract with a separate bill of lading with Defendant Champagne to move the Array from the East Beltline location to the Bradford location. As in *Reider*, there is no privity between the carriers of the separate legs of the journey and no through bill of lading. The Court therefore concludes that the Carmack Amendment does not apply to the case, and will remand it to state court. Consequently, the Court need not consider the motion to dismiss, and will deny it as moot. The Court's conclusion that the Carmack Amendment does not apply, however, is intended to be preclusive.

### III.

For the foregoing reasons, the Court holds that the Carmack Amendment does not apply to this case. The Court will therefore grant Plaintiff's motion to remand and deny as moot Defendants Transguard and Champagne's motion to dismiss. Defendant University's motion to join is therefore also moot.

The Court will issue an Order consistent with this Opinion.


Dated: July 22, 2014                                /s/ Robert Holmes Bell
                                                                               ROBERT HOLMES BELL
                                                                               UNITED STATES DISTRICT JUDGE